## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

AMBER MAKKINJE, *individually and
on behalf of all others similarly situated*,

**Case No. 8:21-cv-02234-WFJ**

    Plaintiff,

**CLASS ACTION**

v.

**JURY TRIAL DEMANDED**

EXTRA SPACE STORAGE, INC.,

    Defendant.

_____/

## FIRST AMENDED CLASS ACTION COMPLAINT[1]

    Plaintiff Amber Makkinje brings this class action against Defendant Extra Space Storage, Inc., and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation on conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

    1.    This is a class action under the Florida Security of Communications Act, Fla. Stat. Ann. § 934.01, *et seq.* ("FSCA"), arising from Defendant's unlawful interception of Plaintiff's and Class members' electronic communications.

    2.    At issue is Defendant's use of "session replay" spyware to collect, monitor, and record the electronic communications of visitors to its website.

---

[1] Pursuant to Rule 15(a)(1)(B), Plaintiff hereby amends her pleading as a matter of course, thereby mooting Defendant's pending Motion to Dismiss, [DE 8].

3.     Plaintiff alleges that Defendant utilizes session replay spyware to intercept the on-line live chats of visitors to Defendant's website.

4.     Defendant intercepted, recorded, and then stored the electronic chat communications of Plaintiff and the Class members.

5.     As alleged below, Defendant intercepted the electronic communications at issue without the knowledge or prior consent of Plaintiff or the Class members.

6.     Defendant caused Plaintiff and the Class members injuries, including violations of their substantive legal privacy rights under the FSCA and invasion of their privacy.

7.     Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful conduct. Plaintiff also seeks a declaration, as well as damages authorized by the FSCA on behalf of herself and the Class members, defined below, and any other available legal or equitable remedies to which they are entitled.

## **PARTIES**

8.     Plaintiff is, and at all times relevant hereto was, a citizen and permanent resident of Manatee County, Florida.

9.     Defendant is, and at all times relevant hereto was, a corporation duly organized and validly existing under the laws of Maryland, with its principal place of business located in Utah.  Defendant is therefore a citizen of Maryland and Utah.

## JURISDICTION AND VENUE

10.     This Court has personal jurisdiction over Defendant because Defendant directs, markets, and provides its business activities throughout the State of Florida, and makes its active commercial website available to residents of Florida for those interested in entering into contracts over the Internet with Defendant.  Indeed, Defendant's website allows residents of Florida to enter into transactions utilizing the website.  During the relevant time frame, Defendant entered into contracts for the sale of services with residents of Florida that involved the knowing and repeated transmission of computer data over the Internet.  This resulted in Defendant generating revenue from sales to residents of Florida, as well accepting payments from Florida residents through the site and ultimately shipping products to Florida. Plaintiff's and the Class members' claims arise directly from Defendant's operation of its website.

11.     Further, this Court has personal jurisdiction over Defendant because Defendant's tortious conduct against Plaintiff occurred in substantial part within this District and because Defendant committed the same wrongful acts to other individuals within this judicial District, such that some of Defendant's acts have occurred within this District, subjecting Defendant to jurisdiction here.  As Defendant has admitted, the Class may consist of over 2.3 million unique individuals who are located in Florida.  *See* Notice of Removal, [DE 1], at 6. Thus, Defendant knew or should have known that it was causing harm to those individuals while they were in Florida such

3

that it was foreseeable to Defendant that its interceptions would harm Plaintiff and other similarly-situated individuals located in Florida.

12.     This court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because at least one member of the putative class, including Plaintiff, is a citizen of Florida, and Defendant is a citizen of Maryland and Utah, thus CAFA's minimal diversity requirement is met. Additionally, Plaintiff seeks $1,000.00 in damages for each violation, which, when aggregated among a proposed class of over 2.3 million, exceeds the $5,000,000 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). *See also* Notice of Removal, [DE 1], at 6.

13.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction, and because a substantial part of the events or omissions giving rise to the claim occurred in this District, and because Plaintiff was injured in this District.

## **FACTS**

14.     Defendant owns and operates the following website: www.extraspace.com.

15.     Since at least the beginning of 2020, Defendant has continuously operated the following session replay computer software code on its website that was provided to Defendant by Quantum Metric, Inc., a company offering session replay and other related services:

```
<script type="text/javascript"
async=""src="https://cdn.quantummetric.com/qscripts/quantum-
extraspace.js"></script>
```

16.     Prior to utilizing the Quantum Metric's session replay spyware, Defendant utilized session replay code on its website provided to it by Contentsquare f/k/a Clicktale, which operates in the same fashion as the Quantum Metric spyware.

17.     Defendant began utilizing session replay spyware on its website as early as 2017.

18.     Quantum Metric describes its spyware as follows:

> At its core, session replay is technology that allows you to watch a user's session they experienced it, similar to how you watch a video. You can pause, rewind, and fast-forward the session (just like a YouTube video) to watch how a user interact with an application.[2]

19.     On its website, Quantum Metric openly discusses that one of the purposes of session replay spyware is to allow companies like Defendant to increase their "conversion" rates, *i.e.*, their sales to consumers:

> Optimize conversion rates
>
> Web analytics platforms like Google or Adobe can show a conversion drop and where that drop occurred in a funnel. But these analytics platforms don't easily explain why that drop occurred, which makes them less helpful for conversion rate optimization.
>
> **Session replay** can help conversion-minded stakeholders quickly validate why customers are stumbling during micro-

---

[2] www.quantummetric.com/enterprise-guide-to-session-replay/; (last visited Oct. 19, 2021).

conversion steps (on their way to an actual conversion) or dropping out of conversion funnels altogether.[3]

20.     Quantum Metric is not a provider of wire or electronic communication services, or an internet service provider.

21.     Defendant is not a provider of wire or electronic communication services, or an internet service provider.

22.     Defendant's use of session replay spyware is not instrumental or necessary to the operation or function of Defendant's website or business.

23.     Defendant's use of a session replay spyware to intercept electronic communications is not instrumental or necessary to Defendant's provision of any of its goods or services.

24.     Defendant's use of a session replay spyware does not facilitate, is not instrumental, and is not incidental to the transmission of any type of communication with Defendant's website.

25.     The following screenshot of Defendant's website shows Defendant's continued use of session replay spyware from Quantum Metric. As depicted by the below, the software functions by intercepting a visitor's commands and information inputted into the website, and then the re-routing that information to Quantum Metric's servers. Defendant utilizes the Quantum Metric spyware to record all visitor activity on its website, including chat communications.

---

[3] *Id.*



26.   The Quantum Metric spyware is always active and intercepts every incoming data communication to Defendant's website the moment a visitor accesses the site.

27.   Defendant continues to utilize session replay spyware to monitor and record visitors to its website, including their chat communications.

28.   On its website, Quantum Metric discuss the interception of website communications using session replay, stating as follows:

*Data in Flight*

Quantum Metric always supports the latest recommended secure cypher suites and protocols, to fully encrypt all customer traffic in transit. Once any data is captured and encrypted, it is transferred via a forward secrecy SSL/TLS connection, to Quantum Metric's cloud service, which is

7

securely    hosted    in    Google's    world-class    cloud
environment.[4]

29.    The following graphic from Quantum Metric's website depicts how

website visit data is "captured" and then sent "in flight" to Quantum Metric's

platform:



---

[4]    www.quantummetric.com/platform-foundations/data-privacy-security/;    (last
accessed October 19, 2021).

30.    The session replay spyware utilized by Defendant captures internet communications between a website user and a website in real-time, while those communications are in transit.  The process is illustrated in the below diagram, which shows a user submitting a request (in the form of website interactions) to a web server. But, along the way, the session replay spyware intercepts those communications and diverts them to a "server-side capture engine," where the communications are stored for later analysis:



31.    Utilizing session replay software, Defendant intercepts visitors' chat communications, transmits them to the Session Replay Provider, and stores them for live or later viewing.   The below screenshot depicts a typical session replay screen showing the interception, capture, and recording of live chats on a website. The session replay spyware utilized by Defendant has the same or similar capability of intercepting and recording live website chats contemporaneously with their transmission.



32.     The relevant facts regarding the full parameters of the communications intercepted and how the interception occurred are solely within the possession and control of Defendant.

33.     The session replay spyware utilized by Defendant is not a website cookie, standard analytics tool, tag, or web beacon.

34.     The session replay spyware utilized by Defendant is not commonplace, and Defendant is one of only a limited number of companies that record website visits without consumer consent.

35.     Unlike the harmless collection of an internet protocol address, the data collected by Defendant identified specific chat messages and information inputted, and thus revealed personalized and sensitive information about Plaintiff's internet activity and habits.

36.     With respect to Plaintiff, between on or about June 2020 and August 2020, Plaintiff visited Defendant's website approximately 10 times.

37.     Plaintiff was in Florida during each visit to Defendant's website.

38.     Plaintiff intends to visit Defendant's website again in the future to avail herself of the goods and services offered.

39.     On or about June or July 2020, Plaintiff utilized the "LIVE CHAT" function on Defendant's website and engaged in chat communications utilizing the function.

40.     Specifically, Plaintiff chatted utilizing the "LIVE CHAT" function and inquired about the availability of storage offered by Defendant, sizes available, locations, rates, and if Defendant was offering any specials at the time.

41.     The following screenshot from Defendant's website shows the chat function that Plaintiff utilized during her website visit:



42.     During her visit to the website when she engaged with the chat function, Plaintiff, through her computer, transmitted electronic communications to Defendant's computer servers utilized to operate the website.

43.     During her visit to the website when she engaged with the chat function, Plaintiff, Defendant utilized session replay spyware to intentionally and

contemporaneously intercept the substance of Plaintiff's electronic chat communications with Defendant's website.

44.     Defendant intercepted, recorded, and then stored Plaintiff's chat communications.

45.     The session replay spyware intentionally utilized by Defendant contemporaneously intercepted the electronic computer-to-computer electronic communications between Plaintiff's computer and/or mobile device and the computer servers and hardware utilized by Defendant to operate its website—as the communications were transmitted from Plaintiff's computer and/or mobile device to Defendant's computer servers and hardware

46.     The intercepted data was transmitted contemporaneously to Quantum Metric's servers as it was sent from Plaintiff's computer.

47.     The electronic communications intentionally intercepted by Defendant were content generated through Plaintiff's intended use, interaction, and communication with Defendant's website relating to the substance, purport, and/or meaning of Plaintiff's communications with the website, *i.e.*, chats conducted on the site with Defendant's employees.

48.     The electronic communications intentionally intercepted by Defendant were not generated automatically and were not incidental to Plaintiff's website visit.

49.     Plaintiff reasonably expected that her chat with Defendant would be private, and that Defendant would not be tracking, recording, and/or watching Plaintiff as she chatted through the website, particularly because Plaintiff was never

presented with any type of pop-up disclosure or consent form alerting Plaintiff that her chats were being recorded by Defendant.

50.     Indeed, unlike e-mail, which a sender expects will result in a permanent record of the communication being created, a reasonable consumer like Plaintiff anticipates that chats on a website will be transitory and no record will be maintained, just like a telephone conversation.

51.     Accordingly, Plaintiff reasonably believed that her chat communications on Defendant's website were private, and not that she was being recorded and that those recordings could later be watched by Defendant's employees, or worse yet, live while Plaintiff was on the website.

52.     Moreover, Plaintiff's reasonable expectation of privacy was violated by Defendant in that Defendant transmitted recordings of Plaintiff's website chats to Quantum Metric.

53.     Plaintiff and the putative Class members are unaware that Defendant is monitoring and recording their website chats because Defendant fails to alert visitors to its site that it is using session replay spyware to monitor and record visits.

54.     Defendant violated Plaintiff's and the Class members' expectation of privacy as they chatted on the website by recording and sharing and/or making the chats available to one or more session replay providers.

55.     The session replay spyware utilized by Defendant intercepted, copied, replicated, and sent the data in a manner that was undetectable by Plaintiff and the Class members.

14

56.     Defendant similarly intercepted the electronic chat communications of at least several thousand individuals located in Florida who visited Defendant's website.

57.     Defendant did not utilize a telephone or telegraph instrument, equipment, or facility thereof to intercept Plaintiff's and the Class members' electronic chat communications at issue. Rather, Defendant utilized a spyware embedded within its website to intercept the communications at issue.

58.     Plaintiff's electronic communications did not originate from an electronic or mechanical device which permits the tracking of the movement of a person or an object.

59.     Plaintiff's electronic communications did not originate from a tracking device, *i.e.*, a device whose primary purpose is to reveal its location or movement by the transmission of electronic signals.

60.     The session replay spyware utilized by Defendant is not a tracking device, *i.e.*, a device whose primary purpose is to reveal its location or movement by the transmission of electronic signals.

61.     The session replay spyware utilized by Defendant cannot track the movement of a physical object or body of a person.

62.     The session replay spyware utilized by Defendant cannot reveal its location or movement by the transmission of electronic signals.

63.     The session replay spyware utilized by Defendant did not originate any of the communications at issue. Instead, it solely intercepted communications originating from Plaintiff's computer and/or mobile device.

64.     Defendant never alerted or asked Plaintiff or the Class Members for permission to intercept and record their chats while on Defendant's website using session replay spyware.

65.     Plaintiff and the Class members never consented to interception of their electronic chat communications by Defendant or anyone acting on Defendant's behalf, and they were never given the option to opt out of Defendant's recording.

66.     At no point in time did Plaintiff or the Class members provide Defendant, its employees, or agents with consent to intercept their electronic chat communications using session replay spyware.

67.     At no point in time did Plaintiff or the Class members specifically, clearly, and unmistakably consent to Defendant's interception and recording of their electronic chat communications using session replay spyware.

68.     At no point in time did Plaintiff or the Class members specifically, clearly, and unmistakably consent to Defendant's interception and recording of their chats while on Defendant's website using session replay spyware.

69.     Plaintiff and the Class members did not have a reasonable opportunity to discover Defendant's unlawful interceptions because Defendant did not disclose its interception nor seek consent from Plaintiff and the Class members prior to interception of their communications.

70.     Plaintiff and the Class members never clicked or otherwise agreed to any disclosure or consent form authorizing Defendant to intercept Plaintiff's and the Class members' electronic chat communications using session replay spyware.

16

71.     Furthermore, Defendant's Privacy Policy is buried at the bottom of Defendant's website, while the "Live Chat" button is at the top of the page, meaning that visitors to the website engaging in chats with Defendant's employees would have no reason to encounter the link to the Privacy Policy.

72.     More importantly, Defendant's Privacy Policy says nothing about Defendant's interception and recording of visitor's chats to the website.

73.     Plaintiff and the Class members were never required to click on any box or hyperlink containing Defendant's Privacy Policy upon visiting the website or in order to navigate through the website.

74.     Plaintiff and the Class members were not placed on notice of Defendant's Privacy Policy upon immediately visiting the website.  Instead, Defendant's Privacy Policy is buried at the bottom of Defendant's website.

75.     To even become aware of the Privacy Policy hyperlink, Plaintiff and the Class members would have had to scroll all the way to the bottom of Defendant's website.

76.     Defendant does not require visitors to its website to immediately and directly acknowledge that the visitor has read Defendant's Privacy Policy before proceeding to the site.

77.     Defendant's surreptitious interception of Plaintiff's and the Class members' electronic communications caused Plaintiff and the Class members harm, including violations of their substantive legal privacy rights under the FSCA, invasion of privacy, invasion of their rights to control information concerning their person,

and/or the exposure of their private information. Moreover, Defendant's practices caused harm and a material risk of harm to Plaintiff's and the Class Members' privacy and interest in controlling their personal information, habits, and preferences.

## CLASS ALLEGATIONS

### PROPOSED CLASS

78.    Plaintiff brings this lawsuit as a class action on behalf of all other similarly situated persons pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rule of Civil Procedure. The "Class" that Plaintiff seeks to represent is defined as:

> **All persons residing within the State of Florida (1) who visited Defendant's website and (2) whose electronic chat communications were intercepted by Defendant or on Defendant's behalf (3) without their prior consent.**

79.    Defendant and its employees or agents are excluded from the Class. Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

### NUMEROSITY

80.    The Class members are so numerous that individual joinder of all Class members is impracticable. As Defendant has conceded, at least 2.3 million individuals visits Defendant's website from Florida during the relevant time period. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include notice on Defendant's website, U.S. Mail, electronic mail, Internet postings, and/or published notice.

81.     The identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's records kept in connection with its unlawful interceptions.

## COMMON QUESTIONS OF LAW AND FACT

82.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

(1) Whether Defendant violated the FSCA;

(2) Whether Defendant intercepted Plaintiff's and the Class members' electronic chat communications;

(3) Whether Defendant disclosed to Plaintiff and the Class Members that it was intercepting their electronic chat communications;

(4) Whether Defendant secured prior consent before intercepting Plaintiff's and the Class members' electronic chat communications;

(5) Whether Defendant is liable for damages, and the amount of such damages;

(6) Whether Defendant should be enjoined from such conduct in the future;

(7) Whether Plaintiff and the Class members are entitled to declaratory relief; and

19

(8) Whether Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive or declaratory relief appropriate.

83. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendants routinely intercepts electronic communications without securing prior consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

84. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

85. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### SUPERIORITY

86. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are potentially in the millions of dollars, the individual damages incurred by each member of the Class resulting from

Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

87.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.   For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not.   Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## REQUIREMENTS OF FED. R. CIV. P. 23(b)(2)

88.     Defendant has acted and refused to act on grounds generally applicable to the Class by engaging in a common course of conduct of uniformly monitoring and recording visits to its websites without consent, thereby making appropriate final injunctive relief or declaratory relief with respect to the classes as a whole.

**COUNT I**
**Violations of the FSCA**
**(On Behalf of Plaintiff and the Class)**

89.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

90.    It is a violation of the FSCA to intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept any electronic communication. Fla. Stat. § 934.03(1)(a).

91.    The FSCA defines "intercept" as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."  Fla. Stat. § 934.02(3).

92.    Under the FSCA, "contents" includes, but is not limited to, "any information concerning the substance, purport, or meaning of that communication." Fla. Stat. § 934.02(7).

93.    The FSCA defines "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects intrastate, interstate, or foreign commerce…."  Fla. Stat. Ann. § 934.02(12).

94.    Unlike "oral communications" under the FSCA, "electronic communications" have no expectation of privacy requirement.  *See* Fla. Stat. § 934.02(2) ("'Oral communication' means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation and does not mean any public oral communication uttered at a public meeting or any electronic communication.").

95.    The session replay spyware utilized by Defendant to intercept Plaintiff's and the Class members' electronic communications constitute an electronic or other

device under the FSCA as (1) it is not a telephone or telegraph equipment, or any component thereof; and/or (2) it was not furnished to Defendant by a provider of wire or electronic communication services.  Fla. Stat. § 934.02(4).

96.     The session replay spyware utilized by Defendant is a device or apparatus that can be used to intercept electronic communication.

97.     Defendant violated § 934.03(1)(a) of the FSCA by intercepting Plaintiff's and the Class members' electronic chat communications when they visited Defendant's website.

98.     Defendant intercepted Plaintiff's and the Class members' electronic chat communications utilizing a device or apparatus that can be used to intercept electronic communication, *i.e.*, session replay spyware.

99.     Defendant intercepted Plaintiff's and the Class members' electronic communications without their prior consent.

100.   Defendant continues to utilize session replay spyware on its website to intercept inbound electronic chat communications.

101.   Although not required to state a claim under the FSCA for interception of electronic communications, Plaintiff and the Class members had a reasonable expectation of privacy during their visits to Defendant's website, which Defendant violated by intercepting their electronic chat communications with the website and by sharing those communications and/or making them available to third parties.

102.   Plaintiff and the Class members face a real and immediate threat of future injury from Defendant's continued use of session replay spyware to monitor and record their chats while on Defendant's website.

103.   Plaintiff and the Class members have no control over Defendant's use of session replay spyware to monitor and record their visits to its website.

104.   As a result of Defendant's conduct, and pursuant to § 934.10 of the FSCA, Plaintiff and the other members of the putative Class were harmed and are each entitled to "liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher[.]" Fla Stat. § 934.10(b).

105.   Plaintiff is also entitled to "reasonable attorney's fees and other litigation costs reasonably incurred."  Fla Stat. § 934.10(d).

106.   Plaintiff and the Class members request for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

## COUNT II
### Declaratory and Injunctive Relief
### (On Behalf of Plaintiff and the Class)

107.   Plaintiff re-alleges and incorporates the allegations set in paragraphs 1 through 88 as if fully set forth herein.

108.   Under the FSCA, Plaintiff and the Class members are entitled to "[p]reliminary or equitable or declaratory relief as may be appropriate[.]" Fla. Stat. § 934.10(1)(a).

109.   Plaintiff and the Class members seek a declaration that Defendant's use of session replay software as alleged herein violates the FSCA.

24

110.    Pursuant to § 934.10(1)(a), Plaintiff and the Class members seek an injunction prohibiting Defendant from utilizing session replay software to monitor and record chats on its website without first securing consent.

111.    Defendant's ongoing and continuing violations have caused, and in the absence of an injunction will continue to cause, harm to Plaintiff and the Class members.

112.    Plaintiff and the Class members will suffer irreparable harm if Defendant is permitted to continue its practice of recording chats on its website utilizing session replay software.

113.    The injuries that the Plaintiff and the Class members will suffer if Defendant is not prohibited from continuing to engage in the illegal practices described herein far outweigh the harm that Defendant will suffer if it is enjoined from continuing this conduct.

114.    The public interest will be served by an injunction prohibiting Defendant from continuing to engage in the illegal practices described herein.

115.    Plaintiff and the Class members request for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiff, on behalf of herself and the other members of the Class, prays for the following relief:

a.      An order certifying the Class and appointing Plaintiff as Class Representative and her counsel as Class Counsel;

b.      A declaration that Defendant's practices described herein violate the Florida Security of Communications Act;

c.      An injunction prohibiting Defendant from intercepting the electronic communications of individuals visiting Defendant's website through the use of session replay spyware without their prior knowledge and consent;

d.      An award of actual damages, statutory damages, liquidated damages, and/or punitive statutory damages;

e.      An aware of reasonable attorney's fees and costs; and

f.      Such further and other relief the Court deems reasonable and just.

## **JURY DEMAND**

Plaintiff and Class Members hereby demand a trial by jury.

Dated: October 19, 2021

Respectfully Submitted,

By:   **HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Blvd., Suite 1400
Fort Lauderdale, FL 33301
mhiraldo@hiraldolaw.com
Telephone: 954-400-4713

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis, Esq.
Florida Bar No. 101754
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
(t) (305) 479-2299
(f) (786) 623-0915

**EDELSBERG LAW, PA**
Scott Edelsberg, Esq.
Florida Bar No. 100537
scott@edelsberglaw.com
Christopher Gold, Esq.
Florida Bar No. 88733
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Telephone: 305-975-3320
*Counsel for Plaintiff and Proposed Class*